**THIS AGREEMENT,** entered into this 15th day of May, 2009, by and among Juan Pablo Molyneux ("JP"), J.P. Molyneux Studio, Ltd. ("Studio", and together with JP, "Molyneux,") L.S.J., LLC ("LSJ") and Jeffrey Epstein ("Epstein").

**WHEREAS,** disputes have arisen between Molyneux, on the one hand, and LSJ and Epstein, on the other hand, relating to payments and deliverables in connection with design and related services by Molyneux for LSJ and/or Epstein with respect to Little St. James Island and other properties beneficially owned by Epstein (the "Disputes"); and

**WHEREAS,** the parties hereto desire to settle all Disputes as provided in this Agreement;

**NOW, THEREFORE,** in consideration of the foregoing premises and the mutual agreements, promises and other provisions contained herein, JP, Studio, LSJ and Epstein (the "Parties"), intending to be bound, hereby agree as follows:

1. The Parties agree to settle the Disputes, upon, subject to and in accordance with the provisions of this Agreement.

2. On or before May 15, 2009, Molyneux shall pay Epstein One Million Two Hundred Thousand Dollars ($1,200,000) by wire transfer of that amount to an account designated in writing by Epstein to Molyneux not later than May 15, 2009. With the payment of this amount, all claims shall be released and extinguished, except for claims to enforce the provisions of this Agreement or the Design Services Agreement of even date herewith. Said Design Services Agreement provides its own remedies for any breach thereof, shall not affect the release provisions of this Settlement Agreement, and shall not be treated as an inducement to the execution of the Settlement Agreement.

3. (a) Epstein and LSJ and each of their successors, assigns, heirs, executors and administrators (collectively, the "Epstein Releasors") hereby fully and irrevocably release each of JP and Studio, and each of their successors, assigns, principals, heirs, executors, and administrators (collectively, the "Molyneux Releasees"), of and from any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, costs, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, whether direct, derivative, individual, representative, legal, equitable, or of any type, or in any other capacity, whether based on state, local, foreign, federal, statutory, regulatory, common, or other law, for, upon or by reason of any matter, cause, or thing whatsoever in any way relating to, involving, referring to, arising out of, or based upon, directly or indirectly, any

1

actions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters or things whatsoever, or any series thereof, existing or occurring on or prior to the date hereof relating in any way to the Disputes. Anything to the contrary in this Section 3(a) notwithstanding, nothing herein shall release the Molyneux Releasees from any of their respective joint or several obligations under this Agreement or the Design Services Agreement.

        (b)    JP and Studio and each of their successors, assigns, heirs, executors and administrators (collectively, the "Molyneux Releasors") hereby fully and irrevocably release each of Epstein and LSJ, and each of their successors, assigns, principals, heirs, executors, and administrators (collectively, the "Epstein Releasees"), of and from any and all manner of claims, demands, rights, liabilities, losses, obligations, duties, damages, debts, expenses, interest, penalties, sanctions, fees, attorneys' fees, costs, actions, potential actions, causes of action, suits, agreements, judgments, decrees, matters, issues and controversies of any kind, nature or description whatsoever, whether known or unknown, disclosed or undisclosed, accrued or unaccrued, apparent or not apparent, foreseen or unforeseen, matured or not matured, suspected or unsuspected, liquidated or not liquidated, fixed or contingent, whether direct, derivative, individual, representative, legal, equitable, or of any type, or in any other capacity, whether based on state, local, foreign, federal, statutory, regulatory, common, or other law, for, upon or by reason of any matter, cause, or thing whatsoever in any way relating to, involving, referring to, arising out of, or based upon, directly or indirectly, any actions, transactions, occurrences, statements, representations, misrepresentations, omissions, allegations, facts, practices, events, claims or any other matters or things whatsoever, or any series thereof, existing or occurring on or prior to the date hereof relating in any way to the Disputes. Anything to the contrary in this Section 3(b) notwithstanding, nothing herein shall release the Epstein Releasees from any of their respective joint or several obligations under this Agreement or the Design Services Agreement.

    4.    By entering into this Agreement, the Parties do not intend to make, nor shall they be deemed to have made, any admission of liability of any kind whatsoever. The Parties agree that they are entering into this Agreement for the purpose of settling certain disputes between them and to avoid further expense with respect to those disputes.

    5.    The Parties agree that the existence, terms, and consideration paid pursuant to this Agreement are strictly confidential and that this Agreement will not be filed in any court, except in proceedings to enforce this Agreement or the Design Services Agreement. No Party may reveal any facts about this Agreement or the terms of this settlement without the prior, written consent of each of the other Parties; provided, however, that a Party may disclose facts about the settlement (i) to its or his employees,

accountants and attorneys who require the same for the purpose of performing their employment duties or providing professional services to such Party; (ii) to its or his insurers or re-insurers; (iii) as required by any law, regulation, or rule of a court or court agency; or (iv) in response to a duly authorized subpoena or court order. Before disclosing any facts about the settlement under provisos (i) or (ii) above, the Party making the disclosure shall inform the receiving party of the terms of this confidentiality provision and shall take reasonable measures to ensure that the receiving party agrees not to make further disclosures of the requested information. At least five business days prior to disclosing any facts about the settlement under provisos (iii) or (iv) above (other than in connection with proceedings to enforce the provisions of this Agreement or the Design Services Agreement), to the extent permissible by law, regulation, rule of a court or court agency or court order, the Party making or asked to make the disclosure shall inform each of the other Parties of the proposed disclosure or request for information, and shall, at the request of any Party and at the cost of such requesting Party, file any disclosure or response to the request for information about the settlement or the terms of this Agreement pursuant to a motion or other formal request that the information be maintained in confidence and/or held under seal.

6. The Parties agree that the prior drafting history of this Agreement shall not be used to construe any term of this Agreement. This Agreement has been negotiated by each Party and such Party's respective attorneys, and the language hereof will not be construed for or against any such Party as the principal drafter of this Agreement.

7. The individuals signing this Agreement and the Parties on whose behalf such individuals are signing hereby represent and warrant that they are empowered and authorized to sign on behalf of and bind the Parties for whom they have signed.

8. The Parties represent and warrant that, as of the Effective Date of this Agreement, they have not assigned, conveyed, or otherwise transferred the rights to any claims, demands, causes of action, rights, or obligations related in any way to the claims to be released in paragraphs 3(a) and 3 (b) to any other person or entity, nor shall they hereafter do so.

9. Each Party agrees that this Agreement shall be binding upon the heirs, successors, and assigns of each Party.

10. Each Party represents and agrees that such Party: (i) has fully reviewed this Agreement and has had the opportunity to seek advice by independent counsel of its choosing with respect to the same; (ii) fully understands the terms of this Agreement and has entered into this Agreement voluntarily without any coercion or duress on the part of any person or entity; and (iii) was

given adequate time to consider all implications of this Agreement prior to entering into it.

11.   This Agreement may be executed in any number of counterparts, each of which shall be deemed an original, but all of which together shall constitute one and the same instrument. Signatures of this Agreement transmitted by fax shall have the same effect as original signatures.

12.   This Agreement may not be amended or modified except by a written instrument executed by the duly authorized representatives of all of the Parties. Any waiver of any provision hereof must be in writing and signed by the party to be charged with such waiver. Any such waiver shall be effective only in the specific instance and for the specific purpose for which such waiver is given. No failure on the part of any Party to exercise, and no delay in exercising, any right, power or privilege under this Agreement shall operate as a waiver thereof; nor shall any single or partial exercise of any right, power or privilege under this Agreement, preclude any other or further exercise thereof or the exercise of any other right, power or privilege hereunder.

13.   Any statements, communications or notices to be provided pursuant to this Agreement shall be in writing and sent by hand delivery or by reputable overnight courier to the attention of the Parties indicated below, until such time as notice of any change of person to be notified or change of address is forwarded to all Parties:

    (a)   For Epstein and LSJ:

        Darren K. Indyke, Esq.
        301 East 66th Street, 10B
        New York, New York 10065
        (212) 517-2052

    (b)   For JP and Studio:

        Jay Goldberg, Esq.
        250 Park Avenue
        Suite 2020
        New York, New York 10177
        (212) 983-6000

14.   This Agreement shall be governed by and construed in accordance with the laws of the Virgin Islands applicable to agreements entered into entirely within the Virgin Islands, without regard to the principles of Virgin Islands law regarding conflicts of laws.

15.     Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of any court sitting in the Virgin Islands over any suit, action or proceeding arising out of or relating to the Disputes. Each Party agrees that service of any process, summons, notice or document as provided in Section 13 hereof shall be effective service of process for any action, suit or proceeding brought in any such court. Each Party irrevocably and unconditionally waives any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in such court has been brought in an inconvenient forum. Each Party agrees that a final, non-appealable judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon such Party and may be enforced in any other courts to whose jurisdiction such Party is or may be subject, by suit upon judgment.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by themselves or their duly authorized representatives, as the case may be, as of the date of the day and year first above-written.

J.P. MOLYNEUX STUDIO, LTD.

By: _____
Juan Pablo Molyneux
President

_____
JUAN PABLO MOLYNEUX

_____
JEFFREY EPSTEIN

L.S.J., LLC

By: _____
JEFFREY EPSTEIN
Member

5

15.  Each Party irrevocably and unconditionally submits to the exclusive jurisdiction of any court sitting in the Virgin Islands over any suit, action or proceeding arising out of or relating to the Disputes. Each Party agrees that service of any process, summons, notice or document as provided in Section 13 hereof shall be effective service of process for any action, suit or proceeding brought in any such court. Each Party irrevocably and unconditionally waives any objection to the laying of venue of any such suit, action or proceeding brought in any such court and any claim that any such suit, action or proceeding brought in such court has been brought in an inconvenient forum. Each Party agrees that a final, non-appealable judgment in any such suit, action or proceeding brought in any such court shall be conclusive and binding upon such Party and may be enforced in any other courts to whose jurisdiction such Party is or may be subject, by suit upon judgment.

**IN WITNESS WHEREOF,** the parties hereto have caused this Agreement to be executed by themselves or their duly authorized representatives, as the case may be, as of the date of the day and year first above-written.

J.P. MOLYNEUX STUDIO, LTD.

By:_____
    Juan Pablo Molyneux
    President


_____
JUAN PABLO MOLYNEUX


_____
JEFFREY EPSTEIN


L.S.J., LLC

By:_____
    JEFFREY EPSTEIN
    Member

5